**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

JAMES A. OBESO, ATTORNEY           :
AD LITEM for AMT, a minor, and     :
RELIANCE TRUST COMPANY,            :
as CONSERVATOR of AMT'S            :
ESTATE,                            :
                                   :        CIVIL ACTION NO.
          Plaintiffs,              :        2:08-CV-248-RWS
                                   :
     v.                            :
                                   :
ROSS L. JACOBSON, M.D., and        :
THE LONGSTREET CLINIC,             :
P.C.,                              :
                                   :
          Defendants.              :

## <u>ORDER</u>

This case comes before the Court on Plaintiffs' Motion in Limine to

Prevent Defendants from Blaming Northeast Georgia Medical Center ("Motion

in Limine") [175],  Defendants' Motion to Add Non-Party Northeast Georgia

Medical Center to the Verdict Form ("Motion on Verdict Form") [190],

Plaintiffs' Contingent Motion to Set Aside this Court's Order Approving the

Settlement with Northeast Georgia Medical Center ("Motion to Set Aside

Settlement") [195], and Plaintiffs' Motion to Strike Defendants' Notice of Fault

of Non-Party ("Motion to Strike") [197].  After considering the record, the

Court enters the following order.

## Background

This is a medical malpractice case in which Plaintiff alleges that the

Northeast Georgia Medical Center ("NEGMC"), Ross L. Jacobson, M.D., and

The Longstreet Clinic, P.C. failed to properly monitor AMT's mother while she

was being observed and evaluated during her pregnancy; and as a result,

NEGMC, Dr. Jacobson, and the The Longstreet Clinic failed to timely

recognize signs of fetal distress, which resulted in AMT suffering severe

neurological deficits at birth.  Defendants Dr. Jacobson and The Longstreet

Clinic ("Defendants") have maintained from the start of this action until

October 11, 2010, that neither they, nor NEGMC, did anything wrong to cause

AMT's injuries.

On September 29, 2010, this Court entered an Order [173] approving a

confidential settlement agreement between NEGMC and Plaintiffs.  Following

approval of this settlement agreement, Plaintiffs filed the Motion in Limine

[175] on October 1, 2010 seeking to prevent Defendants from asserting that

NEGMC was at fault for AMT's injuries, a position Defendants had not set

forth in their initial disclosures, in answers to interrogatories, or in depositions

of Defendants' expert witnesses.  Defendants' First Initial Disclosures [17],

filed on January 30, 2009, contains the following:

> (9) If Defendant contends that some other person or legal entity is,
> in whole or in part, liable to the Plaintiff or Defendant in this
> matter, state the full name, address, and telephone number of such
> person or entity and describe in detail the basis for such liability.

> Defendants have no such claim.

Similarly, in a response to Plaintiffs' First Interrogatories, Defendants did not

make any contentions of liability on the part of any entity.

> [18.] If you contend that any other person and/or entity other than
> yourself and/or your practice are responsible for any injury and
> damage to [AMT] please identify that person and/or entity and
> provide all facts upon which you base your contention.

> ANSWER: Defendant has made no such contentions at this time.

(Dkt. [175-1] at 2 of 3).

On October 11, 2010, Defendants filed their Fourth Initial Disclosures

[187] and supplemented their responses to now contend that another entity is

liable to Plaintiffs:

> Northeast Georgia Medical Center [is, in whole or in part, liable to
> Plaintiffs], for any acts or omissions on the part of nursing care
> given to Amanda Hernandez[, AMT's mother,] on December 15,

3

2006.  (See recent testimony of Amanda Hernandez and
anticipated amendment to Rule 26 Report of Dr. William Simpson
as he has verbally confirmed.)

Additionally, Defendants amended a previous response in its Fifth

Supplemental Answers to Plaintiff's First Interrogatories [186] to state:

"assuming the truthfulness of the recent testimony of Amanda Hernandez,

Defendants contend that [NEGMC] and the nurses it employs who cared for

Ms. Hernandez on December 15, 2006," are responsible for some injury or

damage to AMT.  Defendants also filed supplemental reports from their experts,

Dr. William Simpson, M.D. and Dr. Steven Day, Ph.D., on October 21 and 29,

2010, respectively, to reflect their newly adopted position that NEGMC was

negligent in the care it provided to AMT's mother.

Two events of primary importance occurred between the close of

discovery on January 31, 2010, and the Defendants' change of position on

October 11, 2010.  The first, was the deposition of AMT's mother, Amanda

Hernandez.  Defendants had sought early on to find Ms. Hernandez.  Their

search included propounding discovery requests, questioning witnesses during

depositions, and hiring a private investigator to locate her, but to no avail.  (Dkt.

[188] at 2).  On July 7, 2010, Plaintiffs informed Defendants that Ms.

4

Hernandez had been located in Laredo, Texas.  (Id.).  Defendants deposed her

on July 27, 2010.  (Id. at 3).  Following the deposition Ms. Hernandez exercised

her right to read and sign the deposition transcript.  While Defendants did

receive a copy of her deposition sometime after it was taken, the original was

not provided to them until October 14, 2010.  (Dkt. [200] at 5-6).  The errata

sheet to Ms. Hernandez's deposition, completed in Plaintiffs' counsel's office

in Georgia, was not signed until October 4, 2010.  (Id. at 6).

Defendants assert that during that deposition, "Ms. Hernandez introduced

facts into the case that are more condemning of [NEGMC's] conduct than have

ever been brought forth by other witnesses or evidence," including allegations

that the "nurses were forceful with her," that they removed the call button from

the hospital room, and that they failed to respond when she was in distress and

yelled for them.  (Id. at 3-4).  Defendants' contend that this testimony "changed

the entire landscape of the case, as against the Hospital."  (Id. at 4).  Plaintiffs

dispute Defendants contentions concerning the impact of Ms. Hernandez's

deposition, asserting that Defendants "ignore[] facts clearly contained in the

medical record, the testimony of [NEGMC] nurses, and the opinions contained

5

in Plaintiffs' expert disclosures, all of which were available to Defendants *long before [her] deposition.*"  (Dkt. [194] at 9-10 (emphasis in original)).

The second event of primary importance was the settlement between Plaintiffs and NEGMC.  A settlement conference was held on September 29, 2010 and was attended by Counsel for Plaintiffs, Defendants, and NEGMC. The Court entered an Order [173] on September 29, 2010 approving the settlement and dismissing NEGMC.  Communications exchanged between counsel preceding the hearing are relevant to the issues raised by the parties in their pending motions.  In an email sent to Plaintiffs' Counsel on September 13, 2010, responding to Plaintiffs' Counsel's questioning why Defendants' Counsel needed to be present at the settlement hearing, Defendants' Counsel stated:

> One other thing comes to mind about the necessity of my being present for your settlement hearing: What is your position about application of O.C.G.A. Section 51-12-33(d)(1)?  Do you raise any question about whether negligence or fault of the hospital, which will then be a "non-party" will be considered by the jury, with damages apportioned accordingly?

(Dkt. [200-3]).  Plaintiffs' Counsel responded that: "Issues relating to OCGA § 51-12-33 and the other issues you reference will not be considered at the hearing.  The only issue will be approval of the amount and dismissal of the

hospital.  Other issues are for another day."  (Dkt. [200-4]).  At the settlement

hearing, neither Defendants' Counsel nor Plaintiffs' Counsel raised the issue of

apportioning fault at trial between Defendants and NEGMC.

On October 11, 2010, Defendants for the first time in any submission to

the Court sought to assert that NEGMC was liable for harm caused to AMT.

Defendants assert that Georgia tort law requires that fault be apportioned

between them and NEGMC and that NEGMC must appear on the verdict form

in order to apportion fault.  O.C.G.A. § 51-12-33, states in relevant part:

> (c) In assessing percentages of fault, the trier of fact shall consider
> the fault of all persons or entities who contributed to the alleged
> injury or damages, regardless of whether the person or entity was,
> or could have been, named as a party to the suit.
>
> (d)(1) Negligence or fault of a nonparty shall be considered if the
> plaintiff entered into a settlement agreement with the nonparty or if
> a defending party gives notice not later than 120 days prior to the
> date of trial that a nonparty was wholly or partially at fault.

(Dkt. [188] at 5-6).  Defendants argue that they had "every expectation that

Plaintiffs would be using expert testimony to prove their case against

[NEGMC]," but following the settlement between Plaintiffs and NEGMC,

Defendants must now take it upon themselves to carry the burden of

demonstrating the fault of the hospital.  (Id. at 6-7).  Additionally or in the

7

alternative, Defendants argue that they must be allowed to supplement their disclosures, discovery responses, and expert reports given the deposition testimony of Ms. Hernandez.  (Id. at 7-8).  Defendants assert that her testimony will provide evidence of negligent nursing care given to her during the birth of AMT.  (Id. at 7).  Additionally, Defendants' expert Dr. Simpson has opined that assuming the truthfulness of the testimony, he now finds fault with the nursing care provided by NEGMC.  (Id.).

Plaintiffs assert that the question is not whether they were unfairly surprised by the fact that NEGMC may have acted negligently, but rather are unfairly surprised and prejudiced by Defendants' newly asserted defense based upon the negligence of NEGMC.[1]  (Dkt. [194] at 3-4).  Plaintiffs contend that Defendants' effort to now assert blame against NEGMC while previously maintaining throughout this action that NEGMC was not negligent, is untimely and prejudicial.  By failing to amend their initial disclosures and discovery responses in a timely manner, and by failing to present any expert evidence concerning the fault of NEGMC, Plaintiffs argue that Defendants should not be

---

[1] Defendants represented to the Court at the November 3, 2010 hearing that they had no intention to, and would not, argue that NEGMC was grossly negligent.

allowed to change course at this late hour.  (Id. at 6-7).  Additionally, Plaintiffs

argue that had they known that Defendants intended to blame NEGMC at trial,

they would not have released their claims against NEGMC for the consideration

received.

Plaintiffs' Motion in Limine [175], Defendants' Motion on Verdict Form,

and Plaintiffs' Motion to Strike [197] all require the resolution of one central

question: Whether, and to what extent, Defendants may assert the negligence of

now non-party NEGMC as a defense for Plaintiffs' claims against them.  After

resolving this issue, the Court will address Plaintiffs' Motion to Set Aside

Settlement [195].

## Discussion

## I.      Defendants' Assertion of Fault Against NEGMC

The resolution of the question of whether and to what extent Defendants

may assert the fault of NEGMC as a defense at trial presents the Court with a

unique question that involves the interplay of the Federal Rules of Civil

Procedure, this Court's Local Rules, and the provision of the Georgia Code

concerning the apportionment of fault between liable parties.  Federal Rule of

Civil Procedure 26(a)(1) governs the initial disclosures a party "*must*, without

awaiting a discovery request, provide to the other parties," and requires the

provision of "the name and, if known, the address and telephone number of

each individual likely to have discoverable information – along with the

subjects of that information – that the disclosing party may use to support its

claims or *defenses* . . . ." Fed. R. Civ. P. 26(a)(1)(i) (emphasis added).  Rule 26

also requires that:

> (e) Supplementation of Disclosures and Responses.
>
> > (1) In General.
> > A party who has made a disclosure under Rule 26(a) – or
> > who has responded to an interrogatory, request for
> > production or request for admission – *must* supplement or
> > correct its disclosure or response:
> >
> > > (A) in a timely manner if the party learns that in some
> > > material respect the disclosure or response is
> > > incomplete or incorrect, and if the additional or
> > > corrective information has not otherwise been made
> > > known to the other parties during the discovery
> > > process or in writing; . . .
> > >  . . .
> >
> > (2) Expert Witness.
> > For an expert . . . the party's duty to supplement extends
> > both to information included in the [Rule 26] report and to
> > information given during the expert's deposition . . . .

Fed. R. Civ. P. 26(e) (emphasis added).   Local Rule 26.1(C) of the United

States District Court for the Northern District of Georgia reinforces these disclosure requirements by requiring parties "to supplement and amend prior initial, expert or pretrial disclosures" as set forth in Fed. R. Civ. P. 26(e).

As noted above, Defendants in their Initial Disclosures [17] and in their Response to Plaintiffs' First Interrogatories [175-1]  asserted that they had no claim that another person or entity was liable to Plaintiffs for the injuries to AMT.  Prior to October 11, 2010, including throughout the discovery period and multiple supplements to the aforementioned disclosures and responses, Defendants not only maintained that they were not at fault in this action, but that no one was at fault and specifically that NEGMC was not negligent in the standard of care it provided to AMT's mother.  Plaintiffs assert that Defendants, after repeatedly maintaining that NEGMC was not liable, should not be allowed to change course at this stage.  To allow such a change in position, Plaintiffs argue, would run counter to the mandatory requirements of Fed. R. Civ. P. 26(a) and (e) and Local Rule 26.1(C), and would prejudice Plaintiffs.  Defendants assert that Plaintiffs cannot be surprised by the fact that NEGMC may be at fault for the injuries to AMT, because they alleged NEGMC's negligence in their Complaint and attempted to produce evidence of such fault during

11

discovery.  Plaintiffs respond that "this is not about whether Plaintiffs are being

unfairly surprised by the fact that NEGMC may have acted negligently . . . .

[i]nstead, this is about Plaintiffs being unfairly surprised and prejudiced by

Defendants' newly asserted theory of defense . . . ."  (Dkt. [194] at 3-4).

Therefore, Plaintiffs contend that any assertion of fault by Defendants against

NEGMC at trial should be excluded pursuant to Federal Rule of Civil Procedure

37.  Rule 37 states that "[i]f a party fails to provide information or identify a

witness as required by Rule 26(a) or 26(e), the party is not allowed to use that

information or witness to supply evidence . . . at a trial, unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

This Court has previously considered whether a party's failure to

supplement its initial disclosures and/or interrogatory responses, to assert that

another entity was liable to the plaintiff, prevented that party from subsequently

raising the issue of the nonparty's liability.  In Watkins v. Vestil Mfg. Corp., the

plaintiff argued that the defendant had not raised the defense of a nonparty's

liability in a timely manner and therefore evidence of that entity's liability

should be excluded from trial.  No. 2:07-cv-0152-RWS, 2010 WL 883754, at

*6 (N.D. Ga. Mar. 5, 2010).  The defendant conceded that it did not supplement

its interrogatory responses, but argued that the plaintiff was made aware of its

intention to assert the other entity's fault as a potential defense through its

expert reports and deposition testimony.  Id.  This Court held that:

> By not supplementing its interrogatory responses, Defendant failed
> to comply with Fed. R. Civ. P. 26(e)(1) and Local Rule 26.1.
> While Defendant's experts . . .  did raise the issue of [the
> nonparty's] potential liability, Defendant never formally raised the
> defense or answered the specific question posed to it in Plaintiff's
> interrogatory.  Defendant had ample opportunity to supplement its
> interrogatory responses throughout the lengthy discovery period.
> To allow such defense at this stage of the litigation would alter the
> nature of the case and result in prejudice to Plaintiff. The Court
> finds that Defendant's failure to supplement its responses was not
> harmless and it should be barred from asserting a defense based
> upon fault on the part of [the nonparty].

Id.  Similarly, in Burchfield v. CSX Transp., Inc., the plaintiff argued that the

Court should strike the defendant's notice of defense of fault of nonparty due to

untimeliness, because defendant had failed to specify the nonparty's fault in its

initial disclosures or in response to a specific interrogatory asking whether

defendant contended that another entity was liable in the action.  No. 1:07-cv-

1263-TWT, 2009 WL 1405144, at *9 (N.D. Ga. May 15, 2009).  In that case,

the defendant argued that in its deposition notices to two non-parties, it stated it

would discuss the basis for which it now sought to assert nonparty fault.  Id.

13

However, the Court noted that

> the Defendant never formally raised the defense, and never directly
> answered the pointed questions about [the nonparty's] liability.
> Such conduct goes against the principles of forthright discovery,
> and the Court will not allow the Defendant to assert a defense
> based upon fault on the part of [the nonparty].

Id.  In contrast, this Court in Parker v. Brush Wellman, Inc., rejected the plaintiffs' argument that notice of fault of non-parties filed after the close of discovery was untimely.  No. 1:04-cv-606-RWS & No. 1:08-cv-2725, 2010 WL 3418365, at *8 (N.D. Ga. Aug. 25, 2010).  In that case, the defendants argued that they "explicitly raised the defense of nonparty fault in their answers, document production, and deposition questioning."  Id.  The Court agreed with the defendants, that Plaintiffs were placed on notice of the nonparty liability defense prior to the filing of the notice of fault.  Id.

Like the defendants in Watkins and Burchfield, Defendants in the present action did not raise the defense of nonparty fault in their initial disclosures or interrogatory responses.  Additionally, unlike the defendants in Parker, Defendants in this action did not "explicitly raise[] the defense of non-party fault in their answers, document production, and deposition questioning."  A party only has an obligation to supplement its disclosure or response if the

14

"corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  The relevant information at issue is not whether Plaintiffs were aware of facts supportive of NEGMC's liability, but rather whether Defendants corrected their initial disclosures and discovery responses to assert that they believed there was a basis to assign fault to NEGMC for AMT's injuries.[2]  "The purpose of the discovery rules is not only to elicit unknown facts, but also to narrow and define the issues, and for this purpose it is often necessary to use discovery about known facts."  Evergreen Trading, LLC v. United States, 80 Fed. Cl. 122, 136 (Fed. Cl. 2007) (quoting 8 Wright, Miller, & Marcus, Federal Practice and Procedure § 2014 (1994)).[3]  Relevant to this action, one purpose of discovery as

---

[2] Defendants contend "that since evidence of negligence of the hospital has been in the case from the beginning, with the only change being that the settlement makes it incumbent on [Defendants] to see that this evidence gets before the jury," nothing more than complying with O.C.G.A. § 51-12-33(d)(1) is necessary to assert the fault of NEGMC at trial.  (Dkt. [200] at 11).  While the Georgia statute may not require more, the Federal Rules of Civil Procedure and this Court's Local Rules do, specifically mandating a timely supplementation of disclosures and discovery responses.

[3] The rules of discovery "are designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise." Shelak v. White Motor Co., 581 F.2d 1155, 1159 (5th Cir. 1978); see also Burns v. Thiokol Chem. Corp., 483 F.2d 300, 304 (5thCir. 1973) ("The discovery provision of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize

Plaintiffs were concerned was to "narrow and define" the basis on which

Defendants claim they are not liable for AMT's injuries.  If this action did not

involve the identification of new evidence following the close of discovery,

Defendants like those in <u>Watkins</u> and <u>Burchfield</u> would likely be excluded from

asserting the fault of a nonparty at trial for failure to timely comply with the

mandatory requirements of Fed. R. Civ. P. 26(a) and (e) and Local Rule 26.1(c).

The Georgia apportionment statute, as will be discussed below, would not

change this outcome.  The deposition of Ms. Hernandez followed the close of

discovery and distinguishes this case from the previous cases in which this

Court has addressed this question.  This case is also distinguishable in that the

nonparty against whom Defendants seek to assert fault was previously a named

party in the action.  Nonetheless, there should be consequences for Defendants'

failure to assert fault against NEGMC in a timely manner, particularly during

the discovery period or at any time prior to Ms. Hernandez's deposition.

The Georgia statute on apportionment of fault states in relevant part:

(c) In assessing percentages of fault, the trier of fact shall consider
the fault of all persons or entities who contributed to the alleged

---

concise factual issues for trial.  Properly used, they prevent prejudicial surprises and
conserve precious judicial energies.").

injury or damages . . . .

(d)(1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty . . .

O.C.G.A. § 51-12-33.  The statute requires that when a plaintiff enters into a settlement agreement with a nonparty, as Plaintiffs did in this action with former-Defendant NEGMC, the jury must consider the fault of that party. However, the application of the statute in this action is problematic for at least two reasons.  First, this statutory provision does not negate the responsibility of Defendants under the Federal Rules of Civil Procedure or the Local Rules of this Court.  Second, the statute is silent as to how the jury is to assess the fault of a nonparty.  A jury may not properly apportion fault to a nonparty without evidence of the nonparty's fault.   See Ogletree v. Navistar Int'l Transp. Corp., 245 Ga. App. 1, 3-4, 535 S.E.2d 545, 548 (verdict must be supported by evidence not conjecture); Royalston v. Middlebrooks, 303 Ga. App. 887, 893, 696 S.E. 2d 66, 72 (apportionment of damages cannot be unreasonable or contrary to the evidence).

Given the requirement of O.C.G.A. § 51-12-33 that the jury apportion fault to any liable nonparty, the question arises as to how the jury is to assess

17

the fault of a nonparty.  In a case in which the nonparty was never a named

defendant in the action, the burden of producing through discovery and

presenting at trial the evidence by which a jury may apportion fault to a

nonparty would presumably fall entirely upon the named defendant(s).  In

contrast, in a scenario like the present action--in which a previously named

defendant has settled with the plaintiff and is now a nonparty--the question of

how evidence of the nonparty's fault is to be presented to the jury and who

bears the responsibility for producing and/or presenting such evidence of fault

are more difficult.  Answering this question will likely have to be tailored to the

specific facts and procedural history of each action.  In this action, where

Defendants have maintained until recently that NEGMC is not at fault for

AMT's injuries, Defendants may not now use the opinion of any of Plaintiffs'

expert witnesses to prove the fault of NEGMC at trial.  Defendants may not rely

upon this evidence that was available previously, but that it implicitly

determined was not reliable.  Defendant bears the responsibility for providing

evidence by which the jury may apportion fault.

As Defendants assert, "no one can deny that the handling of litigation

calls forth the use of trial tactics."  (Dkt. [200] at 7).  Additionally, no one can

deny, that decisions as to litigation strategy often involve a cost-benefit analysis

that accounts for the rewards and risks of a given strategy.  No defendant has an

obligation to "blame" its co-defendant simply because a plaintiff has asserted

blame against that entity.  There are benefits to defendants in presenting a

unified front that no negligence has occurred and no one is at fault for a

plaintiff's injuries.  However, this tactic also carries with it risks, particularly in

light of the principles of forthright discovery embodied in the Federal Rules of

Civil Procedure and the Local Rules of this Court.  One such risk is evidenced

by how this action has unfolded.  Defendants' decision not to assert that

NEGMC was negligent in the care it provided to AMT's mother, was beneficial

up until the point Plaintiffs settled with NEGMC.  However, that decision has

now placed Defendants in a position, where absent the recent testimony of Ms.

Hernandez, Defendants would be foreclosed from offering any expert evidence

that NEGMC failed to provide the appropriate standard of care to AMT's

mother.  As Defendants have noted:

> The truth, as previously stated, is that these Defendants had no
> intention whatsoever to blame the hospital at that time.  Counsel
> for these Defendants attended many depositions in which
> numerous witnesses called by and employed by the Plaintiffs
> "blamed" the hospital. . . . Still, under the posture of the case as it

19

> was unfolding, these Defendants had absolutely no obligation to join forces with the Plaintiffs to "blame" the hospital.  In fact, had there been no settlement, and had the case gone on to trial against all Defendants, there would have been no blaming the hospital, as counsel would not believe that that would have been a sound tactic.

(Dkt. [200] at 15).  A decision as to litigation strategy does not represent a substantial justification for failing to disclose a defense or supplement an earlier response.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule . . . 26(e), the party is not allowed to use that information . . . at a trial . . . .).

Defendants generally should be aware that at some point in a judicial action, a plaintiff may reach a settlement agreement with one or more, but not all, of the defendants.  At that point, a defendant that has not previously asserted that any of its co-defendants are liable in the action, or as here, has presented evidence in discovery that its co-defendant is not liable, is faced with the issue of presenting evidence to the jury by which it may apportion fault.  If the remaining defendant(s) seeks to assert fault against a nonparty after the close of discovery in a case requiring an expert opinion to prove that fault, it will have no basis upon which to do so.  A defendant that chooses not to "blame" its co-defendant, but rather to rely upon the plaintiff to present the evidence necessary

20

to apportion fault, takes the risk that the plaintiff will choose not to present that evidence.  This is the case when the plaintiff, as here, has settled with the nonparty.

Prior to the deposition of Ms. Hernandez, Defendants maintained that no person or entity was liable for AMT's injuries.  They presented no evidence, expert or otherwise, of NEGMC's fault.  Absent Ms. Hernandez's deposition, Defendants would have no basis for offering amended expert reports and thus no basis for the inclusion of NEGMC on the verdict form.  Having settled with NEGMC, Plaintiffs have no intent to present evidence of NEGMC's fault at trial.  Further, this Court does not intend to allow Defendants to exceed the scope of Plaintiffs' direct examination to inquire as to the fault of NEGMC. Federal Rule of Evidence 611(b) states that "cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."  Given Defendants' decision not to assert that NEGMC was at fault for AMT's injuries, particularly in light of the expert testimony produced in discovery, the Court is unlikely to allow any cross-examination on this issue if it exceeds the scope of the direct

examination of any of Plaintiffs' witnesses.  To be clear, Defendants may not

cross-examine Plaintiffs' expert witnesses on the issue of NEGMC negligence,

fault, or responsibility for the injuries suffered by AMT, unless Plaintiffs open

the door on direct examination.

Given the timing of Ms. Hernandez's deposition and the circumstances

which prevented it from being taken during the prescribed discovery period, the

Court will not restrict Defendants from offering expert testimony on the fault of

NEGMC.  The Court recognizes that Plaintiffs contend that given the record

produced through discovery – including the medical record, the testimony of

the hospital nurses, and the opinions of Plaintiffs' experts – Ms. Hernandez's

deposition added no new basis for asserting fault against NEGMC.  The

previous opinions and testimony of Defendants' experts that NEGMC was not

negligent given the evidence previously available, and the position that the

Hernandez deposition testimony "changed the entire landscape of the case" in

such a way as to cause the same experts to now find NEGMC negligent, is

better challenged by Plaintiffs on cross-examination, rather than through the

exclusion of the evidence.

The Court is aware that the deposition of Ms. Hernandez took place on July 27, 2010, and Defendants did not indicate on the record that they intended to assert the fault of NEGMC as a defense until October 11, 2010. The Court is cognizant that at the time of the September 29, 2010 settlement hearing, Defendants intended to assert this defense, but did not raise it with the Court at that hearing. However, given the particular circumstances of this case, the Court finds that the amendment of Defendants' initial disclosures and interrogatory responses, to the extent they are based upon the deposition of Ms. Hernandez, are timely. Defendants' Counsel's silence on this matter at the settlement hearing was not a fraud on the Court or otherwise representative of any type of unsavory conduct.

Of particular relevance is the email exchange between counsel for Defendants and Plaintiffs prior to the settlement hearing and the timing of the availability of Ms. Hernandez's official deposition transcript. More than two weeks prior to the settlement hearing on September 29, 2010, Defendants' Counsel specifically asked Plaintiffs' Counsel: "What is your position about application of O.C.G.A. Section 51-12-33(d)(1)? Do you raise any question about whether negligence or fault of the hospital, which will then be a 'non-

party' will be considered by the jury, with damages apportioned accordingly?"
(Dkt. [200-3]).  Plaintiffs were on notice that Defendants intended to address
the negligence of the hospital at trial.  While Defendants had still not amended
their disclosures or responses at that time to assert the defense of nonparty fault,
and while Plaintiffs may have believed that it was too late to do so, Plaintiffs
were aware of the testimony given by Ms. Hernandez and also aware that an
official transcript of that testimony had not yet been provided to Defendants.
Nonetheless, Plaintiffs' Counsel asserted that issues of NEGMC's fault "are for
another day."

 Thus, Plaintiffs' Counsel was on notice before the settlement hearing that
Defendants intended to raise the apportionment issue.  In fact, the issue would
have likely been raised at the settlement hearing but for Plaintiffs' Counsel's
telling Defendants' Counsel that the issue should not be raised, but would be
"for another day."  Like Defendants' Counsel, Plaintiffs' Counsel chose a
strategy that bore risks.  Plaintiffs' Counsel elected to take the risk that after
Plaintiffs settled with NEGMC, Defendants would still be able to offer evidence
of the fault of NEGMC at trial and seek to have a portion of the fault  assigned
to NEGMC.  To now seek to insinuate bad conduct on the part of Defendants'

Counsel because Plaintiffs went forward with the settlement is somewhat disingenuous.

In fairness to all counsel, the Court recognizes that the present apportionment statute was passed in 2005, and its application in particular circumstances is still evolving.  This is certainly true in the context of the present case where the federal procedural rules come into play.  However, this case should serve as a warning that counsel should re-evaluate time-honored strategies that may no longer be viable under the present statutory framework.

Based on the foregoing, Plaintiffs' Motion in Limine [175] and Plaintiffs' Motion to Strike [197] are **DENIED**.  Defendants may assert the fault of NEGMC as a defense, but may not rely upon the testimony or opinions of any expert witness of Plaintiffs, unless the door is opened by Plaintiffs. Defendants' Motion on Verdict Form [190] is **DENIED**, **with the right to renew** following the close of evidence at trial.  If Defendants are able to present credible evidence by which a jury may apportion fault to NEGMC, then NEGMC will appear on the verdict form.

25

**II.     Plaintiffs' Motion to Set Aside Settlement [195]**

Plaintiffs' Motion to Set Aside Settlement [195] is contingent on the Court's rulings on Plaintiffs' Motion in Limine [175] and Defendants' Motion on Verdict Form [190].  Plaintiffs assert that "[i]f this Court determines that Defendants are <u>not allowed</u> to completely change their prior position in order to blame NEGMC, then this motion will be moot."  (Dkt. [195] at 1 (emphasis in original)).  Since the Court will allow Defendants to present evidence arising from Ms. Hernandez's deposition in support of nonparty fault, the Court will address the merits of Plaintiffs' Motion [195].  Plaintiffs rely upon Fed. R. Civ. P. 60(b) which allows the Court to set aside a final judgment, such as Plaintiffs' settlement with NEGMC, under certain enumerated circumstances. Specifically, Plaintiffs assert that the following circumstances provide them with grounds for relief from the Court's Order [173]:

(1) ". . . surprise . . . ;"

(2) "newly discovered evidence that, with reasonable diligence, could not have been discovered . . .,"

(3) "misconduct by an opposing party;" [or]

(6) "any other reason that justifies relief."

26

Fed. R. Civ. P. 60(b).  The Court will examine each circumstance in turn.

As discussed above, Defendants have maintained throughout much of this action that there was no negligence on their behalf or on the part of NEGMC in the care provided to AMT's mother.  Defendants' attempt to assert blame against NEGMC, to the extent it is based on the record as it existed prior to the Hernandez deposition, could have certainly come as a surprise to Plaintiffs.  However, the Court has limited Defendants' ability to utilize evidence that Defendants previously rejected.  Defendants will necessarily be required to rely upon the deposition testimony of Ms. Hernandez in asserting their defense.  Asserting fault on these grounds should not have surprised Plaintiffs.  Defendants' Counsel put Plaintiffs on notice two weeks prior to the settlement hearing that they intended for the jury to apportion fault to NEGMC, asking: "Do you raise any question about whether negligence or fault of the hospital, which will then be a 'non-party' will be considered by the jury, with damages apportioned accordingly?"  (Dkt. [200-3]).   Further, Plaintiffs were privy to the deposition testimony provided by Ms. Hernandez.  While they contend that it adds nothing new to the record, at a minimum the allegation that the nurses removed the call button from the hospital room is a novel assertion,

27

and Plaintiffs should not be surprised by Defendants' reliance on her testimony

to assert the fault of NEGMC.

Plaintiffs fare no better on their second asserted ground for setting aside

their settlement with NEGMC.  Given the email from Defendants' Counsel to

Plaintiffs' Counsel raising the issue of apportionment of fault as to NEGMC,

Plaintiffs could have discovered Defendants' new position.  As noted above,

Defendants have represented that they will not assert at trial that NEGMC was

grossly negligent, but was negligent in the care it provided to AMT's mother.

Also, Plaintiffs fail on the third asserted ground for relief, because Defendants

are not guilty of any misconduct in this action.  There is no evidence that

Defendants or their Counsel violated any duty of candor to the Court, or

engaged in any other misconduct, and the Court concludes that they have not.

Finally, there are no other reasons that justify this Court setting aside its

Order [173] approving the settlement agreement between Plaintiffs and

NEGMC.  First, the settlement agreement was a contract entered into freely by

Plaintiffs and NEGMC following mediation proceedings.  Second, Plaintiffs

were on notice that Defendants intended to seek apportionment of fault at trial.

Third, the Court has limited Defendants use of expert testimony of NEGMC''s

28

fault at trial.  Fourth, Defendants will not assert that NEGMC was grossly negligent in the care it provided to Ms. Hernandez.  In light of this, the Court does not find that other justifiable reasons exist to set aside the settlement agreement this Court approved on September 29, 2010.  Therefore, Plaintiffs' Motion to Set Aside Settlement [195] is **DENIED**.

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion in Limine [175], Plaintiffs' Motion to Strike [197], and Plaintiffs' Motion to Set Aside Settlement [195] are **DENIED**.  Defendants' Motion on Verdict Form [190] is **DENIED**, **with the right to renew**.

**SO ORDERED**, this   24th   day of November, 2009.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)