# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| JAMES A. OBESO, ATTORNEY AD LITEM for AMT, a minor, and RELIANCE TRUST COMPANY, as CONSERVATOR of AMT'S ESTATE, : : : : : : : | |
| Plaintiffs, : : | CIVIL ACTION NO. 2:08-CV-248-RWS |
| v. : : | |
| ROSS L. JACOBSON, M.D., and THE LONGSTREET CLINIC, P.C., : : : : | |
| Defendants. : : | |

## ORDER

This case comes before the Court on Defendants' Continuing Motions in Limine [222] and Plaintiffs' Motion in Limine [224]. After considering the record, the Court enters the following Order.

## Background

This is a medical malpractice case in which Plaintiff alleges that the Northeast Georgia Medical Center ("NEGMC"), Ross L. Jacobson, M.D., and The Longstreet Clinic, P.C. failed to properly monitor AMT's mother while she

was being observed and evaluated during her pregnancy; and as a result, NEGMC, Dr. Jacobson, and the The Longstreet Clinic failed to timely recognize signs of fetal distress, which resulted in AMT suffering severe neurological deficits at birth.

Plaintiffs have settled their claims against NEGMC.  (See Dkt. [173]). Prior to that point, Dr. Jacobson and The Longstreet Clinic ("Defendants") had not alleged any fault on the part of NEGMC.  Following the settlement between Plaintiffs and NEGMC, Defendants amended their initial disclosures and answers to interrogatories to assert that NEGMC was in whole, or in part, liable to Plaintiffs for AMT's injuries as a result of the nursing care it provided to AMT's mother, Amanda Hernandez.  (See Dkt. [186, 187]).  Defendants' expert witness, Dr. Simpson, also filed a supplemental report asserting that NEGMC was negligent in the care it provided to AMT's mother.  (Dkt. [224-1]). Normally such an amendment after the close of discovery would be inappropriate.  "However, given the particular circumstances of this case, the Court [found] that the amendment of Defendants' initial disclosures and interrogatory responses, to the extent they [were] based upon the deposition of Ms. Hernandez, [were] timely."  (Dkt. [208] at 23).  The Court noted that

2

"absent the recent testimony of Ms. Hernandez, Defendants would be foreclosed from offering any expert evidence that NEGMC failed to provide the appropriate standard of care to AMT's mother." (Id. at 19).

## Discussion

### I.     Defendants' Continuing Motions in Limine [222]

Defendants' Motion [222] seeks an order that: prohibits the questioning of witnesses as to the veracity of other witnesses; prohibits any comment by Plaintiffs' Counsel during the opening statement which purports to tell the jury which witnesses or evidence Defendants may present during trial; prohibits any criticism of Defendants' actions or care which do not arise to a deviation from the standard of care supported by expert testimony; prohibits any reference to other claims and lawsuits brought against Dr. Jacobson; and prohibits evidence or argument seeking damages for medical expenses of AMT up until the age of his majority. For the reasons discussed at the March 10, 2011 hearing in this matter, and with the limitations discussed therein, Defendants' Motion in Limine [222] is **GRANTED** as to asking witnesses to comment on the veracity of other witnesses and referencing other claims or lawsuits brought against Dr. Jacobson, and **DENIED** as to the limitation of Plaintiffs' opening statement and

3

as to criticism of the care provided by Defendants.  The Court now turns to the question of whether Plaintiffs may present evidence or argument of damages for AMT's medical expenses up until the age of his majority.

Defendants state that "the issue before this Court is whether Reliance Trust or James Obeso has the right to sue for those medical expenses incurred while AMT is a minor."  (Dkt. [237] at 4).  The Court has already ruled upon this issue.  In its Motion to Dismiss [143], Defendants stated:

> [AMT] is a minor and has no right to personally recover damages for medical expenses incurred while he is a minor.  Further, [AMT] is a ward of the State of Florida, and the State of Florida has solely assumed the obligation of paying for [AMT's] medical expenses.  Accordingly, Mr. Obeso is not the real party in interest in terms of collecting any damages for any medical expenses incurred by [AMT].

(Dkt. [143] at 2).  In the brief accompanying their Motion to Dismiss [143], Defendants correctly noted that "FRCP 17(c) provides guidance for situations in which a minor seeks to bring a suit or defend a suit." (Id. at 40).  In relying upon Fed. R. Civ. P. 17(c) to deny Defendants' Motion to Dismiss [143], the Court stated:

> The June 18, 2008 Order of the family court states "the Court has determined that it is in the child's best interest to be represented by an attorney ad litem because . . . the child may have a civil court

4

cause of action." (Ex. 1, Dkt. [143]). That Order further states that:

> James A. Obeso is appointed to serve as a contract attorney through the State of Florida Guardian ad Litem Program as attorney ad litem to represent the legal interest of [AMT]. The attorney ad litem is granted full authority to file pleadings, conduct discovery and represent the child's express wishes.
>
> (Id.). Because Mr. Obseso was appointed by a Florida court to act as AMT's representative specifically in anticipation of a civil action such as this, the Court finds that he is AMT's representative either as a "general guardian" or "like fiduciary." See Fed. R. Civ. P. 17(c)(1)(A), (c)(1)(D). AMT is the real party in interest in this action, but as a minor he needs an individual to represent his interests in this action. The State of Florida has appointed Mr. Obeso to do just that.

(Dkt. [174] at 3-4). If Defendants believed that the Court had made a clear error of law in that ruling, its appropriate avenue for relief is through a motion for reconsideration. Having failed to seek reconsideration of the Court's Order [174], the Court will not allow Defendants to relitigate this issue through their Motion in Limine [222]. Defendants' Motion in Limine [222] is **DENIED** as to the request to preclude evidence or argument seeking damages for medical expenses of AMT up until the age of his majority.

5

**II.    Plaintiffs' Motion in Limine [224]**

Plaintiffs seek to exclude opinions set forth in Dr. William Simpson's Supplemental Rule 26 Report [224-1].  Plaintiffs argue that Dr. Simpson is not qualified to offer an expert opinion as to the care provided by NEGMC's nursing staff, and even assuming he is, the process he used to arrive at his opinions concerning that care lacks reliability.  Plaintiffs also contend that Dr. Simpson's new opinions, regarding Ms. Hernandez's clinical picture and Dr. Jacobson's care of her, should be excluded as untimely.

Defendants seek to offer Dr. Simpson's supplemental testimony in support of the argument that the NEGMC nursing staff was negligent in the care it provided to AMT.  To prove that the nurses caring for Ms. Hernandez at NEGMC were negligent, Defendants must show: "(1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained." McDowell v. Brown, 392 F.3d 1283, 1295 (11th Cir. 2004) (quoting Smith v. Am. Transitional Hosps., Inc., 330 F. Supp. 2d 1358, 1361 (S.D. Ga. 2004)).  Under Georgia law, a physician's area of expertise encompasses the standard of care applicable to nurses.  Id. at 1296-

6

1297 (citations omitted). The opinion of an expert deemed competent to testify on a given subject matter must still be "screened by Rule 702 to determine if it is otherwise admissible expert testimony." Id. at 1295 (quoting Legg v. Chopra, 286 F.3d 286, 292 (6th Cir. 2002)). Federal Rule of Evidence 702 requires Defendants to demonstrate that Dr. Simpson is "qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." Id. at 1298.

After reviewing Dr. Simpson's supplemental deposition in its entirety, for the reasons stated below the Court finds Dr. Simpson's opinion concerning the nursing care to be unreliable. Further, the Court does not find that his opinion would assist the jury in resolving whether the actions of the nurses caused AMT's injuries. Dr. Simpson opines that the nurses' negligence in removing the call button from the room, negligence in failing to record syncopal episodes, and negligence in failing to properly monitor Ms. Hernandez's condition and properly respond to her complaints contributed to AMT's injuries. (Deposition of William B. Simpson, M.D., Jan. 19, 2011 ("Simpson Depo") at 36:20-37:16, 49:12-19). While Georgia law considers doctors competent to testify as to the care provided by nurses, Dr. Simpson

7

AO 72A
(Rev.8/82)

appeared unable to articulate the applicable standard of care during his supplemental deposition.  (Id. at 45:13-46:17, 61:1-12, 85:11-20; see also Smith, 330 F. Supp. 2d at 1363 (excluding expert testimony from a nurse who could not articulate the appropriate standard of care)).

Further, Dr. Simpson's opinions about the care provided by the nurses are based solely on the deposition testimony of Amanda Hernandez.  (Id. at 29:25-30:2).  He did not "attempt to compare whether the comments [Ms. Hernandez] made regarding what happened on December 15th were consistent or inconsistent with the medical record" before offering his supplemental expert report.  (Id. at 29:10-15).  While he opines that the nurses did not see Mrs. Hernandez often enough on the afternoon of December 15, Dr. Simpson was not aware of how many times they actually saw her, nor could he offer an opinion as to how often the nurses should have seen her given her presentation and complaints.  (Id. at 56:25-58:4, 58:16-20, 61:1-12; see also Smith, 330 F. Supp. 2d at 1362 (noting that "expert testimony required to prove medical malpractice must be . . . detailed in order to assist the trier of fact in understanding what was reasonably required of the nursing staff")).  Further, he has never previously given an opinion about the care provided by any medical

8

provider, including nurses, where he did not review the medical record in forming that opinion. (Id. at 52:5-10). Additionally, Dr. Simpson did not examine any of the deposition testimony of the nurses previously retained by NEGMC to offer their opinion of the nursing care provided to Ms. Hernandez. (Id. at 16:11-16).

It is not the case that Dr. Simpson examined the record as a whole and then concluded that despite evidence to the contrary, he would credit the testimony of Ms. Hernandez concerning the care provided by the nurses. Rather, he put on blinders and focused exclusively on the testimony of Ms. Hernandez without examining the medical record. This approach to offering an opinion on the medical care provided to a patient lacks reliability. Not surprisingly, it is not an approach that Dr. Simpson has previously utilized. Furthermore, it is within the ken of the average juror to recognize that removing a patient's call button from a hospital room or ignoring a patient's pleas for help is inappropriate. See McDowell, 392 F.3d at 1299 (noting that "the notion [that] early treatment is [better than delayed treatment] well within common knowledge that would be obvious to the average juror, but has nothing to do

9

with causation"). Plaintiff's Motion in Limine [224] to prohibit Dr. Simpson from offering his opinion of the nursing care is **GRANTED**.

Plaintiffs also contend that Dr. Simpson's new opinions, regarding Ms. Hernandez's clinical picture and Dr. Jacobson's care of her, should be excluded as untimely. Plaintiffs' Motion in Limine [224] as to these two opinions is **DENIED**. While not dispositive, Plaintiffs' Counsel do not address either of these opinions in their Reply in Support of the Motion [236]. The Court will allow Dr. Simpson to testify as to Ms. Hernandez's clinical picture on the afternoon of December 15, because Plaintiffs' Counsel specifically explored this topic with him during the supplemental deposition and it does not appear to be inconsistent with his initial deposition. The Court will also allow Dr. Simpson to note the distinction between Ms. Hernandez's pregnancy with AMT and her previous pregnancies in which she displayed signs of premature labor. While Dr. Simpson may have been able to glean most of this information from the records provided to him, Ms. Hernandez testified as to the details of her prior pregnancies during her deposition and specifically confirmed the nature of her prior pregnancy and delivery that occurred in Mexico.

10

## Conclusion

For the aforementioned reasons, Defendants' Continuing Motions in Limine [222] is **GRANTED in part**, and **DENIED in part**, and Plaintiffs' Motion in Limine [224] is **GRANTED in part**, and **DENIED in part**.

**SO ORDERED**, this  2nd  day of June, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)